*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 21, 2024

Plaintiff-Appellee,

v                                                                     No. 361466
                                                                      Jackson Circuit Court
MARTELL DESHAWN HOLT,                                                 LC No. 21-002478-FH

Defendant-Appellant.

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of first-degree home invasion that
stemmed from an incident in which he broke into and stole property from the home of his ex-
girlfriend. Defendant was sentenced as a second-offense habitual offender to serve 6 to 20 years'
imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The victim and defendant began dating in July 2021, and she testified that the relationship
started fine but "just kind of went bad kind of quickly." She also testified that, one afternoon when
she came home from work, she noticed that a table in her home was moved, that her bed was
unmade, and that "on my couch there was a condom wrapper on it and a ring left behind." She
testified that she recognized the ring as belonging to defendant and that no one aside from her had
access or a key to her home. The victim testified that when she confronted defendant about this,
he first denied it, and then "laughed about it and kind of felt mocked about it like pretty much what
are you going to do." The victim testified that their relationship ended the beginning of August
2021.

In the early morning hours of August 23, 2021, the victim woke up to defendant standing
in the doorway of her bedroom, and defendant told her to come downstairs with him to talk. She
testified that as she and defendant went outside, she noticed that her purse and keys were not on
the couch by her front door as they usually were. Once they were outside, the victim reached for
her phone in her pocket and testified that defendant "grabbed my hand so I couldn't get my phone
out of my pocket because he didn't want me to use it." She testified that she later saw defendant

-1-

pulling her belongings, including her purse, watch, and work nametag, out of a bush next to the front porch. The victim testified that she also noticed that her Apple watch, wallet, the title to her car, and her car keys were missing. The victim then called the police, and Jackson City Police Officer Brandi Davis was dispatched to the home. Officer Davis did not enter the home, and she was unable to locate defendant or any of the victim's missing property.

The victim testified that the same day, after she left the house for some time to run errands, she came back home and saw that her bathroom window was pushed through and that her house was a mess. The victim testified that she called the police again, and Officer Luis Reynaga was dispatched. Officer Reynaga testified that he went inside the house to assess the damage, but he was unable to locate defendant or locate any of the victim's missing property. The victim testified that she moved to another location with her children, but on August 27, 2021, she returned to the home and saw that it was uncharacteristically messy, the door to the basement was opened, and a window was opened. She testified that she then called the police a third time.

As noted, the jury found defendant guilty of first-degree home invasion, MCL 750.110a(2), and sentenced him as a second-offense habitual offender, MCL 769.10, to serve 6 to 20 years' imprisonment. This appeal followed.

## II. JURY INSTRUCTIONS

Relying on the Michigan Supreme Court's holding in *People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994), defendant argues that he was entitled to a specific unanimity instruction because the prosecution presented materially distinct acts to prove whether defendant committed larceny or assault and that, therefore, the trial court plainly erred by not instructing the jury that it must unanimously agree on *which* underlying felony was proven beyond a reasonable doubt. Alternatively, defendant argues that he was denied effective assistance of counsel because defense counsel failed to request a specific unanimity instruction. We disagree.

## A. STANDARDS OF REVIEW

Generally, we review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). And we review "for an abuse of discretion a trial court's determination that a specific instruction is inapplicable given the facts of the case." *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). However, because this issue was not preserved for appeal, we review it for plain error affecting defendant's substantial rights. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Under plain error review:

> First, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id.* (citation omitted).]

Generally, "[w]hether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide

whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But because no evidentiary hearing was held before the trial court, this Court's "review of this issue is limited to mistakes apparent on the record." *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011).

## B. ANALYSIS

The Michigan and United States Constitutions both provide defendant with a constitutional right to a unanimous jury verdict. See US Const, Ams VI; Const 1963, art 1, § 14; *People v Gadomski*, 232 Mich App 24, 30; 592 NW2d 75 (1998). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Cooks*, 446 Mich at 511. Generally, in cases in which "materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *Id*. at 512-513.

In a general unanimity instruction, the trial court instructs the jury, after listing the elements of all the charges in a case, that the "verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agree upon that verdict." *Id*. at 509. A specific unanimity instruction, on the other hand, instructs the jury that "it must unanimously agree on the same specific act" if "the prosecution offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense." *Gadomski*, 232 Mich App at 30. A specific unanimity instruction must be given if: "1) the alternative acts presented as evidence are conceptually distinct or there are distinct proofs regarding each alternative, or 2) other factors are present that create a genuine possibility of juror confusion or disagreement." *Cooks*, 446 Mich at 519. In determining whether a specific unanimity instruction is required, the "critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others." *Id*.

In the present case, the trial court instructed the jury that in order to find defendant guilty of first-degree home invasion, it must find that: (1) defendant broke into a dwelling with force; (2) defendant entered the dwelling; and (3) when defendant entered, was present in, or was leaving the dwelling, "he committed the offense of *larceny and/or assault*." The trial court then gave the jury a general unanimity instruction:

> A verdict in a criminal case must be unanimous. In order to return a verdict it is necessary that each of you agrees on that verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind. Any verdict must represent the individual considered judgment of each juror.

During closing argument, concerning whether defendant committed a larceny or assault while in the house, the prosecutor stated:

> You all don't have to agree on what he did in that home. If some of you think he committed an assault, some of you think he committed a larceny, some of you think he committed both, all of that is fine. You just have to unanimously

believe he did either a larceny or an assault or both. You can have six of you think it's a larceny and six of you think it's an assault. That's enough . . . you don't have to be unanimous on what he did as long as you're unanimous on that it was either a larceny or an assault or both.

After the jury verdict, defendant moved for a new trial and for an evidentiary hearing in the trial court, arguing that he was entitled to a specific unanimity instruction and that defense counsel was deficient for failing to request such an instruction. The trial court denied defendant's motion, stating that the prosecutor did not charge defendant with two separate and distinct home invasion offenses, but charged him with committing one offense under alternate theories and that, therefore, a specific unanimity instruction was not required. The trial court did not err, let alone plainly err, when it did so.

The acts presented as evidence of the underlying felony for defendant's first-degree home invasion charge were not "conceptually distinct," and "distinct proofs" were not provided for each alternative charge. See *Cooks*, 446 Mich at 519. Rather, materially identical evidence was presented with respect to each act, and therefore, the general unanimity instruction provided by the trial court was sufficient. See *id*. at 512-513. On the third element of first-degree home invasion, the jury was instructed that the prosecutor must prove beyond a reasonable doubt "that when the defendant entered, was present in, or was leaving the dwelling he committed the offense of larceny and/or assault." The evidence presented to prove that defendant committed larceny was the victim's testimony that when defendant was present in her home in the early morning of August 23, he took her belongings, including her purse, wallet, car keys, and opened her Amazon packages. The evidence presented to prove that defendant committed assault was that when defendant was standing on the porch of the victim's home, he grabbed her hand so that she could not retrieve her phone from her pocket.

Furthermore, "it is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *Gadomski*, 232 Mich App at 31. The elements listed in the jury instructions constituted alternative means of proving a first-degree home invasion offense. Defendant would have been properly convicted of first-degree home invasion even if some of the jurors believed that he committed the offense solely on the basis of larceny, while the rest of the jurors believed that he committed the offense solely on the basis of assault. See *id*. Therefore, the general unanimity instruction provided by the trial court was not plain error. And because defendant was not entitled to a specific unanimity instruction, defense counsel did not violate defendant's constitutional right to effective assistance of counsel by failing to request one. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) ("Trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.").

III. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court abused its discretion by admitting evidence of various other acts because the other acts did not fall under the definition of domestic violence under MCL 768.27b and the victim's testimony was not relevant under MRE 401 and unfairly prejudicial under MRE 403. We disagree.

## A. STANDARDS OF REVIEW

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). We review de novo whether the trial court properly applied the law or whether a rule of evidence or statute precludes admission. *Id*.

## B. ANALYSIS

MRE 404(b)(1) states in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." This evidence may be admissible for any relevant purpose other than to establish propensity. See MRE 404(b)(1). The prohibition against the use of propensity evidence applies to both the defendant's acts and "other acts" evidence "of any person, such as a defendant, a plaintiff, or a witness." *People v Rockwell*, 188 Mich App 405, 409-410; 710 NW2d 673 (1991). Notwithstanding MRE 404(b), in cases of domestic violence, MCL 768.27(b) "permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). Under MCL 768.27b(1):

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Evidence of prior domestic violence is admissible because it provides "a full and complete picture of a defendant's history" and tends to "shed light on the likelihood that a given crime was committed." *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011).

Domestic violence includes "occurrences causing physical or mental harm to a family or household member or placing a family or household member in fear of harm." *Railer*, 288 Mich App at 220. MCL 768.27b(6) states in relevant part:

> (a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:
>
> * * *
>
> (*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>
> (b) "Family or household member" means any of the following:
>
> * * *

*(iv)* An individual with whom the person has or has had a dating relationship. . . .

Even when admissible, a trial court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. "Unfair prejudice" exists when "there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Defendant focuses on three aspects of the victim's testimony on appeal: (1) that defendant lied to her about whether he had family living in Jackson, Michigan; (2) that defendant lied to her about whether his brother was in a car accident; and (3) that when she confronted defendant about the condom wrapper and ring found on her couch, he denied it, and then told her "like pretty much what are you going to do." During closing argument, the prosecutor argued that defendant was "gaslighting" the victim throughout the course of their dating relationship:

> Gas lighting. Right? Making her feel crazy about what she knows.
>
> You heard from [the victim]. You heard what their relationship was like leading up to the home invasion. . . . You heard him, you heard say [sic] that first he says I don't have any family in Jackson other than my sister. . . . And he says my, my brother got into a really bad car accident in Detroit and I have to go be with him and he's intubated, and two days later he's, he's home and fine.
>
> You know, she comes home and finds the condom in her house and she finds the ring on the couch and she's like, these are yours. He says no, it's not. It's not me. It's not me. It's not me. Right? That denial. And then even at some point laughing and almost mocking her like, well I mean what are you going to do about it even if it is me's [sic].
>
> But all of those are, are examples of, of that gas lighting of how she felt leading up to the home invasion.
>
> Now all of those are other acts. And you just heard judge instruct you on what those other acts means and, and how you can apply them. The law allows you to use them in very specific circumstances and, and this case is (inaudible) them.

Defendant first argues that the acts did not fall under the definition of "domestic violence" under MCL 768.27b(6)(a)(*iv*) and that the prosecutor's examples of gaslighting did not meet this definition. This argument is immaterial. All the other-acts evidence admitted under MCL 768.27b, and discussed in the prosecutor's closing argument as "gaslighting," were statements admissible as an admission of a party-opponent because they were statements made by defendant to the victim. See MRE 801(d)(2). "A statement of general intent is not a prior act for purposes of MRE 404(b). As the statement of a party opponent, the admissibility analysis involves instead first determining whether the statement was relevant, and second whether its probative

-6-

value outweighed its possible prejudicial effect." *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 881 (1988). Although the trial court analyzed the admissibility of the evidence under the MCL 768.27b exception to MRE 404(b), the only issue is whether the statements were relevant and unfairly prejudicial. Moreover, we "will not reverse when the trial court reaches the right result for the wrong reason." *People v Moorman*, 331 Mich App 481, 490; 952 NW2d 597 (2020).

To that issue, defendant argues that the risk of unfair prejudice substantially outweighed the probative value of the victim's testimony about defendant's statements. Generally, evidence is relevant, or probative, "if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) (quotation marks omitted). See also MRE 401. To be material, evidence must be "of consequence to the determination of the action," *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996), but does not have to be "an element of a crime or cause of action or defense," *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011). A trial court may exclude admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

The evidence of defendant's statements to the victim are all relevant because they were of consequence to the jury's determination of the nature of the relationship between defendant and the victim, which was related to the determination of the victim's credibility as a witness and whether defendant was guilty as charged. See *Brooks*, 453 Mich at 518. The jury's verdict was dependent on whether it believed the victim's testimony. And the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Unfair prejudice exists "where there is danger that the evidence will be given undue or preemptive weight by the trier of fact or when it would be inequitable to allow the use of such evidence." *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). Unfair prejudice does not mean merely damaging. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). The evidence of defendant's statements to the victim in which he lied about his family, his brother's illness, and whether he broke into the victim's home were all of consequence to relevant facts of the case. The mere fact that the evidence may have been damaging for the jury's impression of defendant is not enough to make the evidence unfairly prejudicial. The most efficient way for the prosecution to directly prove the nature of defendant and the victim's relationship, which was necessary to the jury's understanding of the case, was to admit the evidence of defendant's statements to the victim during their relationship. See *Blackston*, 481 Mich at 462.

Thus, the trial court did not abuse its discretion by finding that the probative value of the other-acts evidence was not substantially outweighed by the risk that it would unfairly prejudice defendant, and the trial court's resolution of this evidentiary question was not outside the range of principled outcomes. See *Feezel*, 486 Mich at 192.

IV. EVIDENCE OF OTHER BREAK-INS

Defendant also argues that aside from the break-in on August 23, 2021, evidence of the other three break-ins was irrelevant and inadmissible because there was insufficient evidence to establish that defendant was the perpetrator. Alternatively, defendant argues that he was denied

effective assistance of counsel because his attorney failed to object to the admission of the evidence of the additional break-ins. We disagree.

## A. STANDARDS OF REVIEW

The court's decision to admit or exclude evidence is reviewed for an abuse of discretion, *Denson*, 500 Mich at 396, which occurs when the court's "decision falls outside the range of principled outcomes." *Feezel*, 486 Mich at 192 (quotation marks and citation omitted). And because the issue of the trial court's decision to admit the evidence was not preserved for appeal, we review the matter for plain error affecting defendant's substantial rights. See *Coy*, 258 Mich App at 12. Similarly, because no evidentiary hearing was held before the trial court regarding defendant's ineffective assistance claim, this Court's review is limited to mistakes apparent on the record. See *Jackson*, 292 Mich App at 600.

## B. ANALYSIS

As stated earlier, MCL 768.27(b) "permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *Railer*, 288 Mich App at 219-220. Evidence of prior domestic violence is admissible because it provides "a full and complete picture of a defendant's history" and tends to "shed light on the likelihood that a given crime was committed." *Cameron*, 291 Mich App at 610. Domestic violence includes "occurrences causing physical or mental harm to a family or household member or placing a family or household member in fear of harm." *Railer*, 288 Mich App at 220.

Generally, evidence is relevant, or probative, "if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Watkins*, 491 Mich at 470. To be material, evidence must be "of consequence to the determination of the action," *Brooks*, 453 Mich at 518, but does not have to be "an element of a crime or cause of action or defense." *Hardrick*, 294 Mich App at 667. MRE 104(b) provides: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

During trial, the prosecution introduced evidence of four break-ins. The victim testified that during the course of their dating relationship, defendant broke into her home while she was at work and left a condom wrapper and ring on her couch. The victim did not call the police after this incident. The victim also testified that after she and defendant ended their dating relationship, defendant broke into her home in the early morning hours of August 23, 2021, and she called the police. This incident was the basis for defendant's first-degree home invasion charge, and this was the only incident in which the victim testified about actually seeing defendant during the break-in. The third break-in the victim testified about was on the evening of August 23, 2021. The victim stated she returned home and saw that her home was broken into again, and she called the police. Lastly, the victim testified that on August 27, 2021, she returned to the home and saw that it was messy, the door to the basement was opened, and the window was opened.

The victim's testimony that it was defendant who broke into her home and left a condom wrapper and ring on her couch was admissible because sufficient evidence was introduced to

support the finding that defendant committed that act. See MRE 104(b). The victim testified that about a month before August 23, 2021, she came home from work and noticed that her daughter's table had been moved from its usual spot, the victim's bed was unmade, and her house was "a mess." She then noticed that there was a condom wrapper and a ring on her couch. She testified that she recognized the ring because she had seen it on defendant's hand before. She testified that he wore the ring "a lot, most all the time." She also testified that when she confronted defendant about this incident, he "laughed about it" and "mocked" her, "like pretty much what you going to do." The evidence was of consequence to the jury's determination whether defendant would break into the victim's home again and of her credibility as a witness. See *Brooks*, 453 Mich at 518. And there was sufficient evidence to connect defendant to the break-in, including the ring left behind, defendant's response when confronted about the incident, and the fact that the victim and defendant were in a dating relationship at the time. See *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007) (stating the Court must defer to the jury's findings by drawing all reasonable inferences and resolving credibility conflicts in support of the verdict). Therefore, the trial court did not plainly err by admitting this evidence. See *Coy*, 258 Mich App at 12.

The victims' testimony that on the evening of August 23, 2021, the same day as the charged incident, she returned home to another break-in, was also admissible, because sufficient evidence was introduced to support the finding that defendant committed that act. See MRE 104(b). The victim and Officer Reynaga both testified that there were signs of forced entry, including a broken window. The victim testified that again, her house was "a mess" and tables were moved around.

> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the complete story ordinarily supports the admission of such evidence. . . .
>
> Stated differently:
>
> > Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime.
>
> [*People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978) (quotation marks and citations omitted).]

The break-in occurred within hours of the charged incident and gave the jury the complete story of what happened on that day. The evidence of this break-in was connected with defendant's charged crime, enough so that proof of one involves the other, and the admission of such evidence is therefore supported. See *id*. Furthermore, the testimony was of consequence to the jury's determination whether defendant broke into the victim's home and of her credibility as a witness. See *Brooks*, 453 Mich at 518. There was sufficient evidence to connect defendant to the break-in, including the similar pattern of messing up the home and moving around furniture. Accordingly, the trial court did not plainly err by admitting this evidence. See *Coy*, 258 Mich App at 12.

Finally, the victim's testimony that she returned to the home on August 27, 2021, to another break-in was admissible under the doctrine of chances. The victim testified that the door to the basement was opened, the window was opened, and that she called the police, but no police officers testified about this fourth and final alleged break-in. Under the doctrine of chances, also known as the doctrine of objective improbability, "as the number of incidents of an out-of-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010).

> [T]he doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency. If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. [*Id*. at 617.]

Thus, "evidence of past alleged accidents may be admitted to show whether the acts alleged to constitute the crime charged in the indictment were designed or accidental, or to rebut a defense which would otherwise be open to the accused." *Id*. at 617-618 (quotation marks and citation omitted; cleaned up). In light of the other break-ins for which there was evidence connecting defendant to the incidents, the break-in that occurred on August 27, 2021, was admissible because as the number of incidents connected to defendant increased, it was less likely that defendant was not responsible for this break-in as well. See *id*. at 616. Moreover, given the temporal proximity of the August 27, 2021 break-in to the two others that occurred on August 23, 2021, the likelihood that defendant was the perpetrator of the final break-in was high.[1]

Turning to defendant's alternative argument, defense counsel's performance was not deficient as to render him "below an objective standard of reasonableness." See *id*. Defendant argues that there is no "sound strategic reason" for an attorney to fail to object to the admission of the break-ins when they already objected to the admission of the evidence before trial. However, two out of three of the additional break-ins were connected to defendant by sufficient evidence. Therefore, defense counsel's failure to object was not a violation of defendant's right to effective assistance of counsel because the evidence was appropriately admitted. "Trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *Fike*, 228 Mich App at 182.

Even if defense counsel's performance was deficient for failing to object to the last break-in, his performance did not change the outcome of the case. See *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). The prosecutor presented sufficient evidence of the charged

---

[1] Even assuming for purposes of defendant's argument that it was an abuse of discretion for the trial court to admit the evidence, admission of this evidence did not affect defendant's substantial rights and was not outcome-determinative. See *Coy*, 258 Mich App at 12. Thus, defendant is unable to show the trial court committed plain error. See *id*.

incident, including the fact that the victim actually saw the defendant breaking into her home the morning of August 23, 2021, and the jury was responsible for deciding whether the victim's testimony was credible and whether defendant was guilty of first-degree home invasion for this charged incident only. Accordingly, defendant is not entitled to a new trial.

## V. CUMULATIVE ERROR

Lastly, defendant argues that, considered cumulatively, the trial court's failure to instruct the jury with a specific unanimity instruction, and the trial court's erroneous admission of defendant's other acts of domestic violence amount to error requiring reversal. The cumulative error doctrine recognizes that "the cumulative effect of a number of minor errors may in some cases amount to error requiring reversal." *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999). In making this determination, "only actual errors are aggregated to determine their cumulative effect." *LeBlanc*, 465 Mich at 591 n 12. Because we find no errors in the issues raised by defendant, "there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray