*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERMAINE DONELL HORRISON,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2020

No. 342528
Saginaw Circuit Court
LC No. 17-043783-FC

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

This case arises out of the fatal drive-by shooting of 15-year-old Keyshawn Abraham. Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life in prison for murder and to two years in prison for felony-firearm. We affirm.

## I. FACTS

On the day of the shooting, defendant and Demetrius Frierson were riding together in a borrowed car when defendant saw Abraham riding a bicycle and talking on a cellphone. As defendant drove past Abraham, defendant asked Abraham who he was speaking with and said, "[T]ell him [I] said what's up." Defendant then removed a revolver from the waistband of his pants, reached his hand outside the car window, and shot Abraham in the abdomen.

Police officers and paramedics were dispatched to the scene of the shooting. Abraham described the suspect to the police officers as "a black male with dreads, an unknown age," who "was driving a silver vehicle." Abraham refused to answer any further questions and was not cooperative in allowing the paramedics to provide treatment. He was transported to the hospital where he later died from the gunshot wound.

Defendant was arrested after his fellow gang members, Frierson and Desmon Reynolds, implicated him, independently, as the killer. At trial, Frierson and Reynolds testified they and defendant were members of a gang called "Squad," and that defendant shot Abraham, a member

-1-

of a rival gang, in retaliation for Abraham's disrespect toward Stone Roberson, a friend of defendant and Frierson who died several years prior. The defense argued that Frierson and Reynolds falsely implicated defendant in exchange for plea deals in other cases. The jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and felony-firearm, MCL 750.227b. Defendant now appeals.

## II. ANALYSIS

## A. PHOTOGRAPHS

Defendant first argues that the trial court improperly admitted into evidence three photographs. The first photograph is of defendant's face, arm, and hand, his hair in dreadlocks, with defendant making a hand signal. The second photograph is a photograph of defendant's face and his hair in dreadlocks. The third photograph depicts an album cover showing a gun. Defendant contends that, as a result if the improper admission of these photographs, he was denied his right to a fair trial. We disagree.

We review the admission of evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). An abuse of discretion occurs if the decision falls outside the range of principled outcomes. *Id.* at 251-252. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 725-726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 764-765.

Defendant first argues that the first photograph was irrelevant. All relevant evidence is admissible except as otherwise provided by law. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Gang rivalry was a central issue for the prosecutor's case. In fact, defendant states on appeal that "[t]he prosecutor had [a] legitimate reason to point to gang rivalry as [a] reason for the killing, and thus [a] legitimate reason to show gang membership." Defendant contends that the prosecutor did not articulate a proper theory of admissibility. However, the prosecutor pointed out that the photographs showed defendant making gang signs, and the prosecutor's theory was that defendant killed Abraham as part of a gang rivalry. Thus, the photographs were relevant and admissible under MRE 401.

Defendant next argues that the first photograph was inadmissible under the balancing test of MRE 403. The Supreme Court has noted that MRE 403 does not prohibit prejudicial evidence but only prohibits evidence that is *unfairly* prejudicial. *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010). This unfairness arises if there is a danger that marginally probative evidence will be given undue weight by the jury. *Id.* The first photograph was highly probative in regard to motive. There were other photographs showing defendant making gang signs and defendant implies that the prosecutor should have relied solely on those. However, we cannot conclude, as defendant argues on appeal, that the probative value of the photograph in question was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," MRE 403, when the jury was fully informed about the "dreadlocks" issue. Reynolds

testified that defendant did not have dreadlocks at the time of the shooting, and a detective sergeant testified that he did not know when the first dreadlocks photograph was taken. Despite Reynolds's testimony, a fair implication from the prosecutor's arguments was that Abraham referred to the shooter having dreadlocks because Abraham feared consequences from "snitching." Thus, under the circumstances, there was no abuse of discretion concerning the admission of the photograph pursuant to MRE 403.

Defendant argues that the second photograph had no probative value. It is simply a photograph of defendant's face, with nothing showing any gang affiliation, and Frierson identified nothing of interest about the photograph. Thus, we cannot discern that it has any probative value. However, even if this photograph was improperly admitted, an "evidentiary error does not require reversal unless, after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight of the properly admitted evidence." *People v Smelley*, 285 Mich App 314, 327; 775 NW2d 350 (2009), vacated in part on other grounds 485 Mich 1023 (2010). Frierson testified that the photograph depicted defendant when he was "younger," and therefore, it was apparent that it was not a photograph of defendant at the time of the crime. That defendant has dreadlocks in the photograph is inconsequential, given that the prosecutor's own witness stated that the photograph was from a different time frame.

Defendant argues that the third photograph depicting a gun was not relevant and highly prejudicial, and therefore, should have been excluded pursuant to MRE 401 and MRE 403. Frierson explained that this photograph was defendant's "song cover" or "mixed-tape cover." The photograph displays the name "Mando"—defendant's nickname—and has the title "Get It Squad" along the top. Frierson testified about another photograph—not being challenged on appeal—that showed himself (i.e., Frierson) and again displayed the name "Mando" and the phrase "Get It Squad." He said that this was another of defendant's song covers. Frierson testified that "Squad" started for the purpose of music "and then . . . just kind of escalated to other things," such as "selling drugs, . . . fights and all type of stuff like that." The two music photographs, viewed in tandem, were relevant because they showed that Frierson and defendant were indeed associated in a music group called "Get It Squad," and therefore, MRE 401 did not require exclusion of the challenged photograph. Furthermore, the photograph corroborated Frierson's testimony regarding defendant's participation in a rap group that evolved into a gang, and therefore its probative value was high. Before the court had ruled on the admissibility of the various photographs, defense counsel argued that defendant, Frierson, and Reynolds were not in a gang but were in a "rap group," and that on the day of the shooting, defendant was at the house of a friend, Marquavis Thomas, who had a music studio in his home. In some respects, the photograph was beneficial to the defense theory because it tended to prove that defendant and Frierson were involved in making music together. Therefore, we cannot conclude that the probative value of the photograph was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403.

Defendant also makes the unpreserved argument that the gun photograph was inadmissible character evidence under MRE 404(a). MRE 404(a) states that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith" except in certain situations not relevant here. However, it is not "clear or obvious," see *Carines*, 460 Mich at 763, that the cover art for a person's album is a "trait of character." Defendant has

not established entitlement to relief under the plain-error doctrine in conjunction with his MRE 404(a) argument. *Id*.

Finally, to the extent that defendant argues that his due process right to a fair trial was violated by the admission of the photographs, this issue is not preserved because defendant did not raise this constitutional issue before the trial court. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). Our review of unpreserved allegations of constitutional error is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763–764. Because there was no error in the admission of two of the photographs, it follows that defendant's right to due process was not violated by their admission. *People v Roscoe*, 303 Mich App 633, 646–647; 846 NW2d 402 (2014). Any error arising from admission of the second photograph was not outcome determinative for the reasons stated above. Accordingly, defendant has not suffered a deprivation of his constitutional right to a fair trial.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial attorney rendered ineffective assistance of counsel in several respects. We disagree.

To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). A defendant must overcome a strong presumption that counsel's actions were based on sound trial strategy. *Id*. at 388.

Defendant first contends that his attorney erred by (1) failing to inform him of a plea offer made before jury selection, (2) failing to seek a plea agreement with the prosecutor earlier in the proceedings, and (3) failing to present Thomas as a witness. However, defendant has failed to carry his burden of establishing the factual predicate for his claim of ineffective assistance of counsel, and he does not request a remand for an evidentiary hearing to explore these issues further and prove his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); MCR 7.212(C)(7) (facts pertinent to an appellant's argument must be supported by references to the lower court record).

Nothing in the record indicates that a plea offer had been made the day before jury selection, that counsel failed to inform defendant of this offer, or that the alleged plea offer provided defendant with a better option than going to trial. Defendant provides no factual support for his assertion that counsel failed to undertake a plea negotiation and has given no indication that any such negotiation would have been successful. Defendant provides no information regarding what Thomas would have testified to or how his testimony would have aided the defense. The decision regarding whether to call a witness is presumed to be trial strategy, *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), and in light of the record, defendant has not overcome this presumption.

-4-

Defendant has not shown that he received ineffective assistance of counsel at trial, and therefore, he is not entitled to relief on this issue.[1]

## C. PROSECUTORIAL ERROR AND ADMISSION OF POLICE TESTIMONY

Defendant makes the unpreserved argument that the prosecutor committed error in several instances. We disagree.

When reviewing a claim of prosecutor error, we must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). "Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error." *Id.*, citing *Carines*, 460 Mich at 752–753.

Defendant argues that the prosecutor erred by seeking admission of the dreadlocks photographs. As noted, the first dreadlocks photograph was admissible when viewed in context, and even if the other photograph was inadmissible, its admission was harmless. *Id.*

Defendant next argues that the prosecutor's alleged commentary regarding defendant's failure to testify constituted misconduct. However, we can discern no such commentary in the lower court record, and defendant's briefing is woefully deficient, improperly leaving this Court to guess about what defendant is arguing. *Bowling*, 299 Mich App at 559; MCR 7.212(C)(7). Likewise, defendant's briefing about a comment by the lead investigator concerning probation is deficient, because he does not elaborate at all about what the comment was or why it was improper. *Bowling*, 299 Mich App at 559; MCR 7.212(C)(7).[2]

---

[1] Defendant makes an additional ineffective-assistance argument that is not included in his statement of questions presented for appeal: that his attorney rendered ineffective assistance of counsel by failing to object to or elicit more information about a Facebook message referring to someone named "Key." Arguments that are not included in the statement of questions presented are not properly presented for appellate review, and we need not consider it. *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999); see also MCR 7.212(C)(5). In any event, defendant's argument is without merit because he fails to establish factual support for his claim. *Hoag*, 460 Mich at 6.

[2] Presumably, defendant refers to an exchange during which the detective sergeant briefly referred to defendant's probationary status in a nonresponsive answer to a question by the prosecutor. Defense counsel objected and requested a cautionary instruction. The court said, "I would advise the jury that any reference to the probation status of anyone that may be mentioned, in this case, is not relevant for your consideration; so please don't consider any kind of reference like that in your deliberations, and in reaching a verdict, in this case." "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531;

Defendant further contends that there was a conspiracy between the prosecutor and the police to implicate him in the murder even though he was innocent. He alludes to the fact that Abraham referred to a person with dreadlocks, but as noted by the prosecutor, it is possible that Abraham was deliberately misleading the police because of the "no-snitch code." Defendant implies that the detective sergeant acted improperly because the search warrant for Facebook, which provided investigative details, was dated June 2, 2017, yet defendant was arrested on May 18, 2017. But the detective sergeant explained that defendant was arrested because two separate people—Frierson and Reynolds—implicated him, independently, as the killer, and only later did the detective sergeant search Facebook for more evidence. Thus, nothing improper or untoward is apparent, and defendant has not shown that he is entitled to relief.

## D. EXTRANEOUS INFLUENCE ON JUROR

Defendant makes the unpreserved argument that a juror should have been excused because she witnessed a fight in the parking lot of the courthouse. We disagree.

To establish error requiring reversal on the basis of an external influence on the jury, a defendant bears the burden of showing that the jury was exposed to an extraneous influence and that this influence created a substantial and real possibility of affecting the verdict. *People v Fletcher*, 260 Mich App 531, 540; 679 NW2d 127 (2004); see also *People v Stokes*, 501 Mich 918; 903 NW2d 194 (2017).

There is no indication from the record that the juror in question attributed the fight she saw to any particular "side" in the courtroom, and the court gave a cautionary instruction to all the jurors. As such, it is not "clear or obvious," see *Carines*, 460 Mich at 763, that the fight witnessed by the juror created a substantial and real possibility of affecting the verdict. *Fletcher*, 260 Mich App at 540. No plain error is apparent in connection with the juror's presence on the jury.

---

455 NW2d 358 (1990) (involving a nonresponsive answer by a police witness). The response here was clearly not wanted by the prosecutor, who immediately tried to move on from the statement. In addition, the trial court properly issued a cautionary instruction. See *id*. Thus, no basis for reversal is apparent.

III. CONCLUSION

Defendant has not shown that he is entitled to relief on any of the issues he raises on appeal.[3]  Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[3] Defendant makes the additional arguments that "a motion to quash all counts was very appropriate" "[d]ue to the lack of physical evidence at the preliminary hearing," and that "a very irrelevant [F]acebook message was admitted."  These issues were not included in defendant's statement of questions presented for appeal, and therefore, are not properly presented for appellate review. *Miller*, 238 Mich at 172; MCR 7.212(C)(5).  We nevertheless find that they lack merit.